**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MATTHEW M. LEE,

                Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of
Social Security,

              Defendant.

CIVIL ACTION NO.: 2:18-CV-32
(BAILEY)

## REPORT AND RECOMMENDATION

## I.     Introduction

### A.     Background

This case arises from the denial of Plaintiff, Matthew Lee's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB").  After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, Karl Alexander ("ALJ"), concluded that, for the period from July 30, 2003 through the date last insured, September 30, 2015 (the period at issue or the relevant period), Plaintiff was not under a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review in January 2018.  Plaintiff now brings this civil action *pro se*.

The Magistrate Judge has considered the parties' briefs and the record on appeal.  The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Accordingly, the recommendation of the Magistrate is set forth below.

### B.      The Pleadings

1.      Plaintiff's Motion for Summary Judgment and Memorandum in Support [ECF Nos. 13 and 13-1].

2.      The Commissioner's Motion for Summary Judgment and Memorandum in Support [ECF Nos. 14 and 15].

### C.      Recommendation

I recommend that:

1.      Plaintiff's Motion for Summary Judgment be **DENIED** because substantial evidence supports the ALJ's finding that Mr. Lee was not disabled as defined in the Social Security Act during the relevant period from July 30, 2003 to September 30, 2015.

2.      The Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth herein.

## II.      Facts

### A.      Procedural History

On February 8, 2014, Plaintiff filed for DIB, which application alleged a disability beginning July 30, 2003.  R. 154.  Plaintiff's claim was denied initially on May 6, 2014 and upon reconsideration on August 20, 2014.  R. 60-71; 72-84.  Plaintiff filed a written request for a hearing pursuant to 20 CFR 404.929, *et seq.*  R. 94.  On August 10, 2016, Karl Alexander, Administrative Law Judge (hereinafter "ALJ"), held a video hearing pursuant to 20 CFR 404.936(c) wherein the Plaintiff appeared and testified before the ALJ in Morgantown, West Virginia.  Larry Ostrowski, Ph.D., an impartial vocational expert, also appeared and testified at the hearing.  Plaintiff's parents, Kristin Willard and Charles Willard, appeared at the hearing but did not testify.  Plaintiff was advised of his right to representation, but chose to appear and testify without the assistance of an attorney or other representative.  R. 36-59.  The ALJ issued his

decision in an opinion dated December 29, 2016, which found that Plaintiff was not under a disability under sections 216(i) and 223(d) of the Social Security Act at any time from July 30, 2003, the alleged onset date, through September 30, 2015, the last date insured.  R. 12-28.

Plaintiff filed the instant action on March 26, 2018.  ECF No. 1.  Defendant filed an Answer on May 23, 2018.  ECF no. 9.  A copy of the Social Security Administrative Record was filed on May 23, 2018.  ECF No. 10.  Plaintiff filed his Motion for Summary Judgment on June 25, 2018, and Defendant filed its Motion for Summary Judgment with Memorandum in Support on July 24, 2018.  ECF Nos. 13 & 14, respectively.

### B.    Medical History

Plaintiff maintains that the following medical conditions render him disabled pursuant to the Social Security Act:  post-traumatic changes to hips and pelvis following a July 30, 2003 motor vehicle accident in which Plaintiff sustained a hemi-pelvectomy, and which includes a gross anatomical deformity of the pubic symphysis and the left sacroiliac joint; disc bulge at L3-4 and L4-5; leftward disc herniation at L5-S1 with impingement on the lateral recess and displacement of the descending sacral nerve roots; chemical dependency on opiate pain medication; chronic pain; anxiety and panic disorders.  ECF No. 13-1 at 1-2.

### C.    Testimonial Evidence

Testimony was taken at the ALJ hearing held on 08/10/16.  The following portions of the testimony are relevant to the disposition of this case.

#### 1.  Matthew Morrison Lee

Following an opening statement by Mr. Lee's representative, Kristen Willard, Mr. Lee testified as follows.  In 2008, Mr. Lee worked for Miller and Anderson, performing commercial

HVAC service work.  He was employed as an apprentice tech.  He was on his feet approximately four (4) hours a day and lifted a maximum of 35-40 pounds.  R. 46-47.

Mr. Lee stated that he had to have his femur replaced with a steel rod following the 2003 motorcycle accident.  R. 47-48.  Mr. Lee experiences pain throughout his back, his hip, and in his pelvis.  His entire body is affected.  He has undergone injections to dull the pain but the pain keeps getting worse.  While sitting, he must change positions every 15 minutes to obtain relief.  He cannot stand for any length of time because it's too painful.  While he can walk, he cannot do so for any distance as it causes him pain.  He must lay down the day after walking any distance to recover.  R. 48.  At most, he can walk two city blocks.  He spends most of his days in bed.  R. 49.

Mr. Lee testified that he is addicted to narcotic medications.  He takes Suboxone for his addiction.  R. 49.  He has had extensive treatment for his back.  While he has not had surgery, he has received the maximum amount of cortisone you can get in a lifetime.  Mr. Lee testified that he has three herniated discs in his lower back: S-1, L-5 and L-4.  R. 50.

### 2. Dr. Larry Ostrowski – Vocational Expert

Dr. Ostrowski testified that Plaintiff's position with Miller and Anderson, which he held in 2008, is classified, according to the DOT, as heating and air conditioning installer, servicer.  That job is further classified as medium skilled with an SVP of 7.  The DOT is 637.261-014.  However, given Plaintiff's testimony that he was working as an apprentice, Dr. Ostrowski adjusted the skill level to 5.  That is still medium level.  R. 52-53.

The ALJ asked Dr. Ostrowski to

assume a hypothetical individual of Claimant's age, educational background, and work history, who would be able to perform a range of sedentary work, but would require the ability to change positions about every 15 minutes.  There should be postural movements occasionally, but no climbing of ladders, ropes, or scaffolds,

and should work in a low stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine.  Should have no interaction with the general public, and no more than occasional interaction with co-workers and supervisors, and would be limited to unskilled work involving only routine and repetitive instructions and tasks.  Would there be any work in the regional or national economy that such a person could perform?

Dr. Ostrowski identified three (3) unskilled and sedentary positions in the local economy that Plaintiff could perform: surveillance system monitor (SVP 2), table worker (SVP 2), and ampoule sealer (SVP 2).  Dr. Ostrowski further testified that if the person had to lie down to achieve comfort, that would not be acceptable in most if not all competitive employment.  An individual can be off task for up to 10% of a workday or work period, and still generally be able to maintain levels of productivity required by employers.  Anything more, however, the individual would lose the job.  The jobs identified by Dr. Ostrowski had a sit/stand option.  Dr. Ostrowski did qualify his choice of ampoule sealer – that it cannot always be performed sitting and/or standing, so he reduced the numbers of available jobs to account for this distinction.  R. 55-56.

Plaintiff's representative questioned Dr. Ostrowski vis-à-vis whether prospective employers, particularly for the position of surveillance system monitor, would require pre-employment drug testing and whether the drug testing would be applicable to drugs prescribed by physicians.  Dr. Ostrowski could not state definitively whether drug testing would be required in each instance, but testified that if there were behaviors which made employers suspicious of drug use, drug testing could be conducted.  Dr. Ostrowski further testified that the individual would be permitted to use medication prescribed so long as the person is able to perform the job. R. 57-58.

### III.    ALJ Findings

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity.  § 404.1520(b).  If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  § 404.1520(c).  If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  § 404.1520(d).  If impairment meets or equals a listed impairment, the claimant is disabled.  *Id.*  However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments.  § 404.1520(e).  After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work.  § 404.1520(f).  If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences.  § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

Here, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2015.  R. 14.  At step one of the process, the ALJ found that, while there was evidence that Plaintiff engaged in substantial gainful activity during the period from his alleged onset date of July 30, 2003 through his date last insured of September 30, 2015, the ALJ nevertheless gave Plaintiff the benefit of the doubt and proceeded through the sequential evaluation necessary to determine Plaintiff's disability status for the entire period in question.  R. 14-15.  At step two of the process, the ALJ found that Plaintiff had the following impairments, which individually or in combination, imposed "more than a minimal effect upon the claimant's ability to perform work related activities for a continuous period of 12 months or more": degenerative disc disease/degenerative arthritis of the lumbar spine with spondylosis and radiculopathy; remote (2003) history of large left flank laceration, fractures, and other injuries; status-post open reduction internal fixation, hardware placement and bowel resection; obesity; history of narcotic pain medication use with addiction, on Methadone; post traumatic stress disorder.  The ALJ further noted that Plaintiff's seizure disorder, possible neuropathic pain in the abdomen, sacroiliitis, diarrhea, hypertension, abdominal hernia and prediabetes are not severe.  R. 15.

At the third step, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  R. 15-17.  At step four, the ALJ found that through the date last insured, Plaintiff had the following residual functioning capacity:

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: requires a sit/stand option, allowing the individual to change positions every 15 minutes, without going off task; can perform postural movements occasionally, except for no climbing of ladders, ropes, or scaffolds; should work

in a low stress environment with no production line assembly line type of pace, no independent decision-making responsibilities and minimal changes in the daily work routine; should have no interaction with the general public and no more than occasional interaction with co-workers and supervisors; and is limited to unskilled work, involving only routine and repetitive instructions and tasks.  R. 17.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  R. 26. However, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform given his residual functional capacity, age, education and work experience; and that, therefore, a finding of "not disabled" was appropriate.  R. 26-27.

## IV.     Motions for Summary Judgment

### A.     Arguments of the Parties

#### 1.     Plaintiff's Arguments

In support of his Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence, and/or the ALJ committed other errors.  As a result, Plaintiff requests reversal of the ALJ's decision and a finding that Plaintiff is entitled to the monthly maximum insurance benefit.  ECF Nos. 13 & 13.1.

#### 2.     Defendant's Arguments

Defendant maintains that substantial evidence supports the ALJ's decision, and that as a result, Plaintiff's Motion should be denied and Defendant's Motion should be granted.  ECF No. 15.

### B.     The Standards

#### 1.     Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56.  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but…must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### 2.    Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence."   42 U.S.C. § § 405(g), 1383(c)(3).   "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (internal citations and quotations omitted).  The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted).  The ALJ's decision must be upheld if it is supported by "substantial evidence."   42 U.S.C. § § 405(g), 1383(c)(3).   "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds* by *Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

### C.    Discussion

Plaintiff has provided a specific and thorough set of arguments which contest the ALJ's findings.  This Court will address them *in seriatim* below.

### 1.    Plaintiff's Work Status in March 2014

Plaintiff first contends that the ALJ erred when the ALJ stated on p. 14 of his opinion that Plaintiff had been working in March 2014.  In response, Defendant maintains that this is merely a typographical error, but even if it were not, Plaintiff fails to identify the prejudice which flowed from this misstatement.  After reviewing the ALJ's decision and the documents contained within the record, and for the reasons set forth by Defendant, the Court is unpersuaded by this argument.

The ALJ clearly references the Exhibit (2E) from which the ALJ obtained this information, and as Plaintiff has pointed out, Exhibit 2E very clearly states that Plaintiff was not currently working.  Given this obvious disparity, Defendant's argument is well taken and it appears that this finding constitutes a typographical error, i.e. the omission of the word "not."

Even assuming, however, that this finding was not merely a typographical error, but rather constituted a substantive finding, Plaintiff's argument is nevertheless without merit because Plaintiff has not identified, and the Court cannot determine the prejudice suffered by Plaintiff as a result of such a (purported) finding.  Indeed, this (purported) finding was not the basis of any substantive decision made by the ALJ.  Rather, the ALJ gave Plaintiff the benefit of the doubt and treated Plaintiff as though he had been out of work for the entire period in question (07/30/03 – 09/30/15).

### 2.    Plaintiff's Work Record – Successful or Unsuccessful

Plaintiff next contends that the ALJ failed to consider Plaintiff's work record as an unsuccessful work attempt per CFR § 404.1574(a)(1) and § 404.1574(c).  Plaintiff cites to the ALJ's decision at page 14 in support of this contention.  A review of the ALJ's decision, however, reveals that the ALJ did not make an adverse determination at step four of the sequential evaluation process.  Rather, the ALJ gave the benefit of the doubt to Plaintiff and proceeded with the sequential evaluation necessary to determine the claimant's disability status for the entire period in question, despite the fact that the record showed that Plaintiff engaged in (according to the ALJ) substantial gainful activity between August 2008 and January 2009. Stated another way, regardless of the ALJ's opinion concerning the aforementioned work attempt, insofar as his ultimate decision, the ALJ considered Plaintiff as either unemployed or as having unsuccessful work attempts for the entire claimed disability period, and thus proceeded to the next step in the evaluation process.

Moreover, the ALJ <u>did not</u> conclude that Plaintiff was sufficiently able to perform his past relevant work.  To the contrary, the ALJ found at step four that Plaintiff was <u>not able</u> to perform his past relevant work and proceeded to step five of the evaluation process.  Thus, even if the ALJ had concluded Plaintiff's work record displayed successful work attempts, this conclusion had no bearing upon the ALJ's ultimate decision vis-à-vis Plaintiff's ability to perform his past relevant work.  As a result, the Court is unpersuaded by this argument.

### 3.    Change in Onset Date

Plaintiff next argues that the ALJ erred when he did not consider a change in onset date as mentioned in Plaintiff's pre-hearing memo.  Plaintiff seems to suggest that the ALJ should have amended Plaintiff's onset date to a date after he terminated employment in light of the

ALJ's finding that Plaintiff "is disabled."   Plaintiff's brief at pg. 4.   However, the Court is unpersuaded by this argument.   A review of the ALJ's decision <u>does not</u> reveal any such finding. To the contrary, the ALJ found that Plaintiff was <u>not</u> under a disability at any time during the relevant time period.   And as Defendant correctly observed, "there is no need to determine an onset date" if there has not been a determination of disability.   *Sidea v. Astrue*, 2011 WL 5037221, at *4 (W.D.N.C. July 12, 2011).

### 4.     Gaps in Plaintiff's Medical Record

Plaintiff next argues that it was error for the ALJ to conclude that Plaintiff ultimately healed from the injuries he sustained in his 2003 motor vehicle accident.   In support of this argument, Plaintiff claims that the ALJ based this decision on gaps in the medical record and on Plaintiff's work record, and argues that, as a result, this conclusion constitutes an 'assumption.' The Court is not persuaded by this argument.   The ALJ's opinions appear to have been based upon the objective, medical findings contained within the record, and in that regard, are supported by substantial evidence.

While the ALJ noted several instances of apparent gaps within Plaintiff's treatment history, the ALJ did not rely upon the same to conclude that Plaintiff "ultimately healed from his injuries."   Plaintiff's brief at 4.   Rather, the ALJ noted that the apparent gaps in treatment detracted from Plaintiff's claims of a disabling condition and as evidence that Plaintiff "continued to do well."   R. 19.   The ALJ further relied upon Plaintiff's work history and the medical record contained within the record to reach the aforementioned conclusions.

Indeed, the ALJ provided a comprehensive and near-exhaustive accounting of Plaintiff's medical documentation at pages 17-26 of the Record.   Many of those records revealed such findings as a normal physical examination, steady gait, negative Romberg test, good (mental)

understanding, and examinations generally within normal limits.  Given the above, the Court **FINDS** that the ALJ's opinion in this regard is supported by substantial evidence and that Plaintiff's arguments to the contrary are unpersuasive.

### 5.    Listings

Similarly, Plaintiff avers that the ALJ erred when he determined that there was no evidence of gross anatomical deformities or any impairment or combination of impairments that met or medically equaled the severity of one of the applicable Listings, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, Plaintiff argues that he met the criteria of the following Listings: 1.02, 1.04, 1.06, and 12.06.  For the reasons that follow, these arguments are not persuasive to the Court.

With respect to Listings 1.02 and 1.06, Plaintiff is required to demonstrate that he has "an inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. pt. 404, app. 1, §§ 1.02A, 1.04C, 1.06B.  Under the regulations, an "inability to ambulate effectively" is defined as an "extreme limitation of the ability to walk."  *Id.* § 1.00(b)(2)(b)(1).  It is further defined as "having insufficient lower extremity functioning…to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id.* There is nothing in the record which supports such a finding, however.  Indeed, there is no documentation in any of the medical records which demonstrates that Plaintiff needs a hand-held assistive device to ambulate or that he has an extreme inability to walk.  To the contrary, the medical records reveal that on numerous occasions, Plaintiff ambulated normally.

With respect to Listing 1.04, Plaintiff argues that there is "substantial medical evidence in the record" which identifies nerve root compression.  Plaintiff's brief at 6.  Plaintiff cites two

medical records, Exhibit 17F, p. 590, and Exhibit 12F, p. 564, in support of this argument.[1]  A review of these records, and indeed the entirety of the Record submitted, does not support a diagnosis of nerve root compression which satisfies all of the requirements of § 1.04A.  Further, and even though the word "impinge", and a number of its iterations have been used to describe objective medical findings within the Plaintiff's medical records, there is nothing in the Record to support a finding that Plaintiff suffers from neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss and positive straight leg-raising test (sitting and supine). Moreover, and with respect to the requirements of § 1.04B, there is no suggestion in any of the medical records that Plaintiff suffers from or has been diagnosed with spinal arachnoiditis.

Plaintiff's argument that he qualified under Listing 12.06 because of his diagnoses of anxiety and post-traumatic stress disorder is similarly not persuasive.  As the Defendant correctly noted in its brief at p. 11, to meet a Listing, and in addition to establishing a medically determinable impairment, a claimant must also establish functional limitations that result from that impairment.  20 C.F.R. § 404.1520a(b).  Importantly, to meet the Listing criteria set forth for anxiety and obsessive-compulsive disorders set forth in § 12.06, Plaintiff must show an anxiety disorder characterized by three or more of the following: restlessness, easy fatigue, difficulty concentrating, irritability, muscle tension, or sleep disturbance, AND two of the following: extreme limitation of understanding, remembering or applying information; interacting with others; concentration, persistence and maintaining pace; or adapting or managing oneself.  There is simply no medical opinion to substantiate such a finding. Consequently, substantial evidence supports the ALJ's finding that Plaintiff does not suffer from any gross anatomical deformities or

---

[1] With regard to this argument, the instant review is not limited to these two medical records.  Rather, the entire Record was reviewed and analyzed when considering this particular argument.  The aforementioned particular records have been cited in this opinion for two reasons: because Plaintiff has relied specifically upon these records and because these records are emblematic of the larger issue.

any impairment or combination of impairments that meet or medically equal the severity of one of the applicable Listings.

### 6.   X-Rays

Plaintiff argues that the ALJ and the Appeals Council failed to view and submit to the record additional evidence, i.e. x-rays which Plaintiff claims revealed anatomical deformities. For the reasons set forth in Defendant's brief, and as confirmed via review of the Record, this argument is not persuasive.

At pg. 42 of the hearing transcript, it appears the ALJ indicated that he <u>could</u> make out what was depicted in the photo of Plaintiff's x-ray.  This is contrary to Plaintiff's contention made at pg. 8 of his brief.  Further, the Appeals Council accepted and made part of the Record both a brief from Plaintiff and additional records, which included the x-rays in question.  Said action is evidenced at pgs. 246-61 or the Record.

### 7.   Vocational Expert and RFC

Plaintiff argues that the jobs identified by the Vocational Expert are in conflict with Plaintiff's RFC as well as the ALJ's two hypothetical scenarios presented at the hearing.[2]  In support of this argument, Plaintiff notes his own testimony wherein he stated that he can only sit for fifteen (15) minutes before he starts to experience pain, and that sitting for three (3) hours (at a sedentary job) would require Plaintiff to take larger doses of medication or "stronger types." Plaintiff's brief at pg. 9.

---

[2] Plaintiff also contends that the ALJ stated the Vocational Expert identified two jobs, but then the Vocational Expert identified three.  A review of the transcript reveals that the ALJ stated as follows: "The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as the following specific vocational preparation 2 jobs: Surveillance System Monitor…Table worker…[and] Ampoule Sealer."  Read in context, it appears the ALJ identified three 'vocational preparation 2' jobs.  In other words, the number "2" above identifies a <u>type</u> of job, not a number of them.

Defendant argues that Plaintiff has provided no evidentiary support for his contention that the jobs identified by the Vocational Expert are in conflict with Plaintiff's RFC. Defendant further contends that none exists. Additionally, Defendant notes that the ALJ is only required to consider those limitations and impairments which are credibly established. The ALJ's RFC and the hypotheticals posed to the Vocational Expert properly included only those limitations which were supported by the record. Although Plaintiff stated that he must lie down to achieve comfort or relief from pain, the ALJ concluded that this limitation was not credibly established. For the reasons set forth below, the Court agrees with Defendant.

Plaintiff seems to take issue with the RFC which the ALJ applied to Plaintiff. Indeed, it appears that Plaintiff believes the RFC is in error because it does not consider Plaintiff's claimed level of pain, and in particular his claimed need to lie down to achieve pain relief. However, a review of the Record reveals that the ALJ did in fact consider Plaintiff's subjective complaints of pain and those complaints and observations of Ms. Willard (Plaintiff's mother). The ALJ compared these subjective complaints to the objective medical evidence contained within the record and determined that the objective medical evidence does not fully support the subjective claims of pain made by Plaintiff.

"Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir.). Here, following an exhaustive examination of the evidence, the ALJ determined that there is no objective medical evidence which supports Plaintiff's claims with respect to the <u>level</u> of pain he experiences, i.e. the need to lay down to obtain relief. After conducting an analysis of

the record submitted on appeal, this Court finds that there is substantial evidence which supports the ALJ's decision.

A review of the pertinent medical evidence reveals no objective medical evidence which fully supports Plaintiff's need to lie down to obtain relief from his pain.  To the contrary, there are multiple records which reveal, among other things, medical examinations within normal limits, that Plaintiff ambulated normally into and out of various medical appointments, and there are multiple records which reveal that Plaintiff obtained and maintained employment, albeit intermittently, during the period in question.  Additionally, the ALJ's RCF accounts for certain of Plaintiff's physical and mental limitations, including but not limited to Plaintiff's need for a sit/stand option while working and limited social interaction.  Therefore, the Court is satisfied that Plaintiff's assignment of error is without merit and that substantial evidence supports the findings of the ALJ in this respect.

### 8.      Claimed Violations of SSR 00-4p

Plaintiff next argues that the ALJ failed to fulfill his duty to make an independent identification of apparent conflicts between the evidence provided by the Vocational Expert and the information provided by the Dictionary of Occupational Titles ["DOT"].  In support of this argument, Plaintiff contends that the ALJ failed to ask questions on the record during the hearing regarding conflicts with the DOT and did not resolve any obvious conflicts.  Plaintiff points out that the ALJ found the Vocational Expert's testimony consistent with the DOT except for the sit/stand option and any possible variances that were not addressed by the DOT.  For these reasons, Plaintiff argues that the ALJ should not have relied upon the Vocational Expert's evidence.  The Court is not persuaded by this argument.

Pursuant to SSR 00-04p, an ALJ has the "affirmative responsibility" to inquire of the Vocational Expert whether the evidence he or she provided conflicts with information contained in the DOT.  Further, the ALJ must obtain a reasonable explanation for the apparent conflict. *Pearson v. Colvin*, 810, F.3d 204, 208 (4th Cir. 2015) (internal citations and quotations omitted). A review of the record reveals that the ALJ did not ask the Vocational Expert whether any conflicts between his testimony and the DOT existed.  This was in error.  However, such an error is harmless in this context because the DOT is silent as to a sit/stand option.  *Coldwell v. Colvin*, No. 5:14-CV-77-FL, 2015 WL 307071, *5 (E.D.N.C. Jan. 21, 2015) (unpublished).  As a result, there was no apparent conflict between the Vocational Expert's testimony and the DOT. *Thompson v. Astrue*, No. 8:09-CV-1968, 2010 WL 3878729 (D.S.C. June 16, 2010) (unpublished), *report and recommendation adopted*, 2010 WL 3880047 (D.S.C. Sept. 28, 2010), *aff'd*, 442 F. App'x 804 (4th Cir. 2011) ("Because the *DOT* does not address the availability of a sit/stand option, it was perforce not irreconcilable with the VE's testimony").  Because there was no conflict, the ALJ's error was harmless.  *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding harmless a violation of SSR 00-4p where no actual conflict existed).

9.      **ALJ's Finding as to Jobs Plaintiff Could Perform in the Economy**

In this section, Plaintiff appears to argue that the jobs of Ampoule Sealer, DOT 559.687-014; Table Worker, DOT 739.687-182; and Security Monitor, DOT 379.367-010, are inconsistent with Plaintiff's RFC and with the hypothetical posed by the ALJ to the Vocational Expert.  Specifically, with respect to Ampoule Sealer, Plaintiff claims the Vocational Expert testified that this job does not have a sit/stand option.  Plaintiff's Brief at 11.

With respect to Plaintiff's argument vis-à-vis Ampoule Sealer, Defendant contends the Plaintiff's characterization of the Vocational Expert's testimony is incorrect.  The Vocational

Expert did not testify that this job has no sit/stand option.  Rather, the Vocational Expert noted the ampoule sealer job is classified as sedentary.  He further testified that this job "cannot always be done sitting…an/or standing."   R. 56.   Defendant next notes the Vocational Expert's clarification that he made an appropriate reduction in the number of ampoule sealer positions that were available in the local and national economies so that the number of available positions he provided in his testimony reflected only those for which the sit/stand option was available.

A review of the record reveals that Defendant's characterization of the Vocational Expert's testimony is correct.  Given the Vocational Expert's apparent reduction of numbers in terms of jobs available to accommodate Plaintiff's need for a sit/stand option, Plaintiff's claim of a conflict between the Vocational Expert's testimony and Plaintiff's RFC or the hypothetical posed by the ALJ is not persuasive.

Plaintiff next argues that he could not perform the job of table worker because he could not maintain a production assembly-type of pace.  However, Plaintiff's interpretation of what is required for 'table worker' is incorrect.   "Table Worker" (DOT 739.687-182) is defined as follows: "Examines squares (tiles) of felt-based linoleum material passing along a conveyor and replaces missing and substandard tiles."   Nothing in the DOT description of table worker specifies that this job requires a production rate pace.   Therefore, this job is <u>not</u> apparently inconsistent with the hypothetical questions posed by the ALJ.

Plaintiff further contends that the job of security monitor is a job which requires independent decision-making responsibilities, and which would give Plaintiff "sole responsibility to determine if a crime or disturbance is taking place."   As a result, Plaintiff contends that this job conflicts with the hypothetical provided to the Vocational Expert by the ALJ.

"Surveillance-System Monitor" (DOT 379.367-010) is defined as follows:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.
> *GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86*

Nothing in the definition suggests that Plaintiff would have "sole responsibility" to determine whether a crime or disturbance is taking place. Further, there is nothing in the definition which suggests that Plaintiff must work such a job alone. Notwithstanding the definition, it could be argued that the Scale of General Education Development (GED) suggests a level of reasoning which would require "independent decision-making responsibilities." However, a closer look at the GED reveals that this is not in fact the case.

GED level 3 is defined in Appendix C of the DOT as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Thus, while this job may require decision-making, said decisions would be confined to "concrete variables" in or from "standardized situations." In other words, the situations which might confront Plaintiff would not be unique or unexpected and would therefore not appear to require any reasoning or decision-making above that which was suggested by the ALJ's hypothetical question.

Notwithstanding the above, and assuming the job of Surveillance-System Monitor conflicts with the ALJ's hypothetical and should therefore be discounted, this error is nevertheless harmless because the Defendant has met its burden at this stage of the proceedings.

Specifically, the jobs of ampoule sealer and table worker exist in numbers well in excess of what is necessary to meet the Commissioner's burden at step five.

At step five of the review process, the burden shifts to the Commissioner to prove by a preponderance of the evidence that the Plaintiff can perform other work that exists in significant numbers in the national economy, considering Plaintiff's residual functional capacity, age, education and work experience. *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016). It is not required that the work exist in the immediate region where the Plaintiff lives. Rather, as other federal courts have recognized, the issue is whether representative jobs exist in significant numbers in either the local or the national economy. *Critchley v. Colvin*, No. 5:15-cv-08288, 2016 WL 3030211, at * 5 (S.D.W. Va. May 4, 2016) (quoting *Gnesa v. Comm'r of Soc. Sec.*, No. 2:12-cv-2298, 2014 WL 1302444, at *6 (E.D. Cal. Mar. 31, 2014)). "The Fourth Circuit has previously found as few as 110, 153, and even 650 jobs significant enough to satisfy the Commissioner's burden." *Vizzini v. Berryhill*, 1:17-cv-00233-RJC-DSC, 2018 WL 4561623 at * 4 (W.D.N.C. Sept. 24, 2018) (quoting *Colgar v. Colvin*, 3:13-cv-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. Apr. 30, 2014)); *Hensley v. Colvin*, No. 5:13-cv-27810, 2015 WL 566626, at *19 (S.D. W. Va. Feb. 10, 2015) (The Fourth Circuit has recognized that 110 jobs in a given region may constitute a significant number of jobs as required by the regulations."); *Rodriguez v. Astrue*, No. 11 Civ. 6977, 2013 WL 3753411, at *3 (S.D.N.Y. July 17, 2013) ("The term significant number is not statutorily defined and courts have generally found that what constitutes a significant number is fairly minimal.")

In the instant case, the Vocational Expert testified that there are approximately 130 regional and 10,100 national table worker jobs, and approximately 70 regional and 16,000 national ampoule sealer jobs. Given the prevailing case law, the Court is satisfied that these jobs

exist in significant numbers in the regional and national economy.  Moreover, it is of no moment that the job of ampoule sealer falls below the 110 regional jobs.  As was stated above, the Commissioner is not required to demonstrate that there are significant numbers of available jobs local to Plaintiff and 16,000 national jobs is a significant number for a job such as ampoule sealer, especially when taking into account that this number has been reduced to reflect the number of jobs available to accommodate Plaintiff's physical, mental and emotional needs.

## V.    Recommendation

Based upon the foregoing, the Court concludes that the ALJ's decision complied with the applicable law and regulations and is supported by substantial evidence.  Accordingly, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 13], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 14], and **DISMISS** this action, with prejudice, from the docket of the Court.

Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record.

Respectfully submitted this 28th day of January 2019.

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE